1

2

3

4

5

6

7

8                                  UNITED STATES DISTRICT COURT

9                                  EASTERN DISTRICT OF CALIFORNIA

10

11   M.M., a minor by and through her guardian          No. 2:19-cv-00398-TLN-EFB
     ad litem JOHN MARSHALL,
12
                        Plaintiff,
13                                                       **ORDER**
             v.
14
15   SAN JUAN UNIFIED SCHOOL DISTRICT,
     KENT KERN, DAMON SMITH, SHELLEE
16   ZAMORA, and DOES 1-30,

17                      Defendants.

18

19

20

21          This matter is before the Court on Defendants San Juan Unified School District

22   ("District"), Kent Kern ("Kern"), Damon Smith ("Smith"), and Shellee Zamora's ("Zamora")

23   (collectively, "Defendants") Motion to Dismiss.  (ECF No. 9.)  Plaintiff M.M., through her

24   guardian ad litem, John Marshall ("Plaintiff"), opposed the motion and Defendants filed a Reply.

25   (ECF Nos. 11–12.)  For the reasons set forth below, the Court GRANTS in part and DENIES in

26   part Defendants' Motion to Dismiss.

27   ///

28   ///

                                                    1

1          **I.      FACTUAL AND PROCEDURAL BACKGROUND**

2          In Fall 2017, Plaintiff, a nine-year-old female student at Del Paso Manor Elementary

3   School, began experiencing escalating verbal and physical harm from E.H., a male student in her

4   class.  (ECF No. 1 ¶¶ 11–13.)  Plaintiff alleges these incidents included pushing, shoving,

5   kicking, punching, and spitting.  (*Id.* at ¶¶ 13, 17.)  Plaintiff further alleges E.H. began making

6   crude comments about her body and passing explicitly crude notes about her to other students.

7   (*Id.* at ¶ 13.)  Zamora, Plaintiff's teacher, intercepted one of E.H.'s notes about Plaintiff and

8   provided it to Smith, the school's principal.  (*Id.*)  The confiscated note stated Plaintiff was "not

9   sexy," "a bitch," and a "piece of shit."  (*Id.*)  The Complaint does not indicate whether any further

10  action or disciplinary action was taken against E.H. for writing the notes about Plaintiff.

11         Prior to the winter break, Zamora and others purportedly witnessed E.H. "discussing

12  [Plaintiff's] breasts, specifically whether or not she wore a bra."  (*Id.* at ¶ 15.)  Zamora told

13  Plaintiff's mother and reported the incident to Smith.  (*Id.*)  Plaintiff alleges her parents were

14  "advised" that the staff were working to ensure Plaintiff and E.H. would be kept separated, and

15  the yard staff had been alerted to the need for "heightened supervision."  (*Id.*)  The Complaint

16  does not detail any actions taken by staff to keep Plaintiff and E.H. separated on the schoolyard or

17  otherwise at school, nor does it assert that Plaintiff and E.H. were actually kept separated.

18         Between January and February 2018, Plaintiff alleges she was "sexually attacked by E.H.

19  on school grounds, including the school playground."  (*Id.* at ¶ 18.)  Specifically, Plaintiff

20  describes how "E.H. sexually assaulted [Plaintiff] by pushing [her] to the ground, jumping on her

21  back with his thighs around her and grabbing her breasts with his hands under her clothing on

22  four separate occasions."  (*Id.* at ¶ 37.)  Zamora allegedly witnessed at least one of these attacks

23  and immediately reported it to Smith, but "did not disclose the sexual nature of the assault to

24  [Plaintiff]'s mother."  (*Id.* at ¶ 19.)  The Complaint does not indicate that Zamora or Smith took

25  any action in response to the witnessed attack.  Following the fourth attack, Plaintiff reported the

26  sexual assaults to her parents, who immediately reported them to Smith.  (*Id.* at ¶ 20.)  Plaintiff

27  asserts E.H. admitted — and other witnesses confirmed — the sexual assaults to Smith.  (*Id.* at ¶

28  21.)  A few days later, Smith spoke with Plaintiff's mother.  (*Id.* at ¶ 22.)  Based on

"representations" Smith purportedly made during that conversation, Plaintiff's mother believed E.H. "had been removed [from Plaintiff's classroom]," and Plaintiff could safely return to school. (*See id.*)  However, upon Plaintiff's first day back at school, she was forced to sit in the same class as E.H. all day, and when Plaintiff's mother picked her up after school, Plaintiff was distraught and crying.  (*Id.* at ¶ 23.)  Plaintiff asserts Smith refused to remove E.H. from Plaintiff's classroom and E.H. was allowed to continue attending school "without repercussions." (*Id.* at ¶¶ 24–26.)

From February to April 2018, Plaintiff alleges she was forced to remain in the same classroom as E.H. and witnessed multiple instances of E.H. "jumping on and knocking down other girls."  (*Id.* at ¶ 26.)  Zamora purportedly witnessed or was made aware of these incidents as well.  (*Id.*)  Again, the Complaint does not indicate that Zamora took any action in response to the incidents witnessed by or reported to her.  Plaintiff asserts she "lived in daily fear that she would be victimized again."  (*Id.*)  During this time, Plaintiff increasingly expressed anxiety and reluctance to go to school each day, began faking sickness and making other excuses to avoid school, had increased difficulty sleeping, and suffered a decline in her academic performance. (*Id.* at ¶¶ 14, 16.)

In or around April 2018, school staff allegedly permitted Plaintiff and E.H. to be seated in the same car for the entirety of a school field trip, which caused Plaintiff "severe discomfort and distress."  (*Id.* at ¶ 27.)  As a result of District's "failure to provide a safe educational environment," Plaintiff asserts she suffered severe emotional distress, which has required psychological care.  (*Id.* at ¶ 28.)  Thereafter, Plaintiff was home-schooled and ultimately transferred to another school which did not have the advanced "Rapid Learner Program" in which Plaintiff was previously enrolled at Del Paso Manor Elementary School.  (*Id.* at ¶ 38.)

Plaintiff alleges she submitted a notice of government tort claim to District on or around June 19, 2018, and District sent a notice of rejection on September 6, 2018.  (*Id.* at ¶ 29.)  On March 5, 2019, Plaintiff filed the instant action against Defendants, asserting causes of action for: (1) Violation of Title IX by District; (2) "Violation of Constitutional Rights under 42 U.S.C. § 1983" ("§ 1983") by the individual Defendants, which Plaintiff identifies as violations of the

1   Equal Protection Clause of the Fourteenth Amendment and Title IX, and Defendants' failure to

2   train; (3) Violation of California Education Code §§ 200 *et seq.* by District; (4) Negligence by all

3   Defendants; and (5) Violation of the Unruh Civil Rights Act, Civil Code §§ 51 *et seq.* by all

4   Defendants.  (ECF No. 1 at 5–16.)  Defendants filed the instant Motion to Dismiss the entire

5   Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  (ECF No. 9.)  Plaintiff

6   opposed the Motion and Defendants replied.  (ECF Nos. 11–12.)

7        **II.    STANDARD OF LAW**

8        A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal

9   sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Federal Rule of

10   Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim

11   showing that the pleader is entitled to relief."  *See Ashcroft v. Iqbal (Iqbal)*, 556 U.S. 662, 678–79

12   (2009).  Under notice pleading in federal court, the complaint must "give the defendant fair notice

13   of what the claim . . . is and the grounds upon which it rests."  *Bell Atlantic v. Twombly*

14   *(Twombly)*, 550 U.S. 544, 555 (2007) (internal quotations omitted).  "This simplified notice

15   pleading standard relies on liberal discovery rules and summary judgment motions to define

16   disputed facts and issues and to dispose of unmeritorious claims."  *Swierkiewicz v. Sorema N.A.*,

17   534 U.S. 506, 512 (2002).

18        On a motion to dismiss, the factual allegations of the complaint must be accepted as true.

19   *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court is bound to give Plaintiff the benefit of every

20   reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *Retail*

21   *Clerks Int'l Ass'n v. Schermerhorn (Retail Clerks)*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff

22   need not allege "'specific facts' beyond those necessary to state his claim and the grounds

23   showing entitlement to relief."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when

24   the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

25   defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S.

26   at 556).

27        Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of

28   factual allegations."  *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir.

4

1   1986).  While Rule 8(a) does not require detailed factual allegations, "it demands more than an

2   unadorned, the defendant–unlawfully–harmed–me accusation." *Iqbal*, 556 U.S. at 678.  A

3   pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

4   elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678

5   ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

6   statements, do not suffice.").  Moreover, it is inappropriate to assume that the plaintiff "can prove

7   facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not

8   been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459

9   U.S. 519, 526 (1983).

10          Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough

11   facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting

12   *Twombly*, 550 U.S. at 570).  Only where a plaintiff has failed to "nudge[] [his or her] claims . . .

13   across the line from conceivable to plausible," is the complaint properly dismissed. *Id.* at 680.

14   While the plausibility requirement is not akin to a probability requirement, it demands more than

15   "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.  This plausibility inquiry is

16   "a context–specific task that requires the reviewing court to draw on its judicial experience and

17   common sense." *Id.* at 679.  Immunities and other affirmative defenses may be upheld on a

18   motion to dismiss only when they are established on the face of the complaint. *See Morley v.

19   Walker*, 175 F.3d 756, 759 (9th Cir. 1999).

20          If a complaint fails to state a plausible claim, "[a] district court should grant leave to

21   amend even if no request to amend the pleading was made, unless it determines that the pleading

22   could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130

23   (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995)); *see

24   also Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in

25   denying leave to amend when amendment would be futile).  Although a district court should

26   freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to

27   deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint."

28   ///

*Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

### III. ANALYSIS

    A.    <u>Violations of Title IX and California Education Code §§ 200 *et seq.*</u>

            <u>(Claims One and Three)</u>

Pursuant to Title IX of the Education Amendments of 1972 ("Title IX"), "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. §1681(a). "'Discrimination' is a term that covers a wide range of intentional unequal treatment; by using such a broad term, Congress gave the statute a broad reach." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 175 (2005). Additionally, there is an implied private right of action under Title IX allowing plaintiffs to file directly in court. *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 255–56 (2009). The Supreme Court has held that "the private right of action encompasses intentional sex discrimination in the form of a recipient's deliberate indifference ... to sexual harassment of a student by another student." *Jackson*, 544 U.S. at 173 (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290–91 (1998)).

California law follows Title IX protection to ensure that "[n]o person shall be subjected to discrimination on the basis of disability, gender, gender identity, gender expression, nationality, race or ethnicity, religion, [or] sexual orientation . . . in any program or activity conducted by an educational institution." Cal. Educ. Code § 220. A claim under California Education Code § 220 ("§ 220") is "governed by the same elements as a federal cause of action under Title IX." *Videckis v. Pepperdine Univ.*, 100 F. Supp. 3d 927, 935 (C.D. Cal. 2015) (citing *Donovan v. Poway Unified Sch. Dist.*, 167 Cal. App. 4th 567, 603 (2008)).

To prevail on a § 220 claim, a plaintiff must prove: (1) she suffered "severe, pervasive, and offensive" harassment that effectively deprived her of the right of equal access to educational benefits and opportunities; (2) the school district had "actual knowledge" of that harassment; and (3) the school district acted with deliberate indifference in the face of such knowledge. *Donovan*,

1    167 Cal. App. 4th at 579.  To state a claim for "student-on-student" harassment under Title IX,

2    the plaintiff must additionally establish that the school district had substantial control over the

3    harasser and the context in which the known harassment occurred.  *Reese v. Jefferson Sch. Dist.*

4    *No. 14J*, 208 F.3d 736, 739 (9th Cir. 2000) (quoting *Davis Next Friend LaShonda D. v. Monroe*

5    *Cty. Bd. of Educ. (Davis)*, 526 U.S. 629, 644–50 (1999)); *see also Karasek v. Regents of Univ. of*

6    *California*, 956 F.3d 1093, 1105 (9th Cir. 2020).

7            Here, Plaintiff asserts claims under Title IX and California Education Code §§ 200 *et seq.*

8    against District (Claims One and Three).  (ECF No. 1 at 5–8, 11–14.)  In moving to dismiss the

9    Title IX and § 200 claims asserted against District, Defendants do not dispute the school

10   exercised control over E.H. or that the school had actual knowledge of the harassment, and thus

11   appear to concede Plaintiff has satisfied these elements.  Nor do Defendants dispute that District

12   is a public entity receiving federal funds, thus satisfying the threshold requirement of Title IX.

13   Instead, Defendants argue Plaintiff fails to allege "plausible" facts sufficiently showing the

14   remaining elements: (1) that E.H.'s harassment of Plaintiff was "sexual" in nature; (2) that

15   Plaintiff was deprived of any educational opportunity; or (3) that any Defendant was deliberately

16   indifferent.  (ECF No. 9-1 at 4–8.)  The Court will address these arguments in turn.

17                           *i.    "Sexual" Harassment*

18           Defendants contend "there is no evidence that Plaintiff was subjected to 'sexual'

19   harassment."  (ECF No. 9-1 at 6.)  But on a motion to dismiss, the Court must accept the factual

20   allegations as true.  *Cruz*, 405 U.S. at 322.  To the extent Defendants intend to argue there are no

21   *allegations* of fact supporting a claim of sexual harassment or that Plaintiff fails to assert any such

22   non-conclusory allegations, the Court finds Defendants' arguments unavailing.  For example, the

23   Complaint plainly alleges "E.H. sexually assaulted [Plaintiff] by pushing [her] to the ground,

24   jumping on her back with his thighs around her and grabbing her breasts with his hands under her

25   clothing on four separate occasions."  (ECF No. 1 ¶ 37; *see also* ECF No. 11 at 8.)  This

26   allegation, alone, is sufficient to establish harassment of a "sexual" nature occurred.  *See*, *e.g.*,

27   *Fitzgerald v. Barnstable School Committee*, 555 U.S. 246, 249 (2009) (allegations that attacker

28   bullied the plaintiff into lifting up her skirt on the school bus, pulling down her underpants, and

                                              7

1    spreading her legs whenever she wore a dress could establish sexual harassment).  However,

2    Plaintiff additionally alleges E.H. passed explicitly crude notes about her body to other students,

3    including one note which stated Plaintiff was "not sexy," "a bitch," and a "piece of shit," and that

4    E.H. had conversations with other students about Plaintiff's breasts and whether she wore a bra.

5    (ECF No. 1 ¶¶ 13, 15.)  This behavior, too, is deemed "sexual" in nature.  *See K.S-A v. Hawaii,*

6    *Dep't of Educ.*, No. CV 16-00115 ACK-KJM, 2018 WL 2144143, at *3 (D. Haw. May 9, 2018)

7    ("harassment motivated either by actual gender or failure to conform with gender stereotypes may

8    form the basis of a Title IX claim."); *see also*, *e.g.*, *Annamaria M. v. Napa Valley Unified Sch.*

9    *Dist.*, No. C 03-0101 VRW, 2006 WL 1525733, at *3 (N.D. Cal. May 30, 2006) (lewd comments

10   and gestures attributed to sexual harassment claim under Title IX); *Davis*, 526 U.S. at 633, 654

11   (statements such as "I want to get in bed with you" and "I want to feel your boobs" deemed

12   "vulgar" and attributed to sexual harassment claim under Title IX).

13           The main thrust of Defendants' argument, however, is that E.H.'s actions cannot be

14   characterized as "sexual" in nature because of E.H.'s age.  (ECF No. 12 at 4; *see also* ECF No. 9-

15   1 at 6 ("common sense would tell us that it is simply not plausible that a third grader would

16   engage in the alleged conduct with the requisite intent to 'sexually harass.'").)  This argument is

17   unpersuasive.  While age certainly is an important factor to be considered, the Supreme Court has

18   nevertheless indicated it is but one of several relevant factors amongst "a constellation of

19   surrounding circumstances, expectations, and relationships" that must be evaluated with respect

20   to a sexual harassment claim.  *Davis*, 526 U.S. at 651–52.  Indeed, the high court clearly

21   established that even a young student's behavior may rise to the level of the "severe, pervasive,

22   and objectively offensive behavior" contemplated under Title IX.  *Id.*  In *Fitzgerald v. Barnstable*

23   *School Committee*, for example, the alleged attacker was also a third-grade boy, like E.H.

24   *Fitzgerald*, 555 U.S. at 249 (reversing dismissal of Title IX and § 1983 claims alleging third-

25   grade boy repeatedly bullied the plaintiff); *see also Davis*, 526 U.S. at 633–34, 651–52 (reversing

26   dismissal of Title IX claim where fifth-grade boy repeatedly made suggestive comments to a

27   classmate and attempted to touch her breasts and genital area); *K.S-A*, 2018 WL 2144143, at *1

28   ///

1    (six and seven-year old male students being called homophobic epithets by their peers alleged

2    claim for sexual harassment under Title IX).

3         Finally, Defendants' argument that E.H.'s physical attacks on Plaintiff cannot be

4    construed as sexual in nature because "E.H. was doing these acts indiscriminately to *all*

5    'children'" (ECF No. 12 at 4–5) does not comport with a plain reading of the allegations in the

6    Complaint.  The Complaint expressly emphasizes that E.H. targeted *females*.  (*See* ECF No. 1 ¶¶

7    26, 56, 85, 93); *see also K.S-A*, 2018 WL 2144143, at *7 (sexually charged conduct, even if not

8    specifically directed at the plaintiff, could be relevant to determination of whether the plaintiff

9    was subjected to sex-based harassment).  Furthermore, to the extent the Complaint suggests E.H.

10   also attacked male students at times, it does not negate a finding of gender-based discrimination

11   arising from the sexual nature of E.H.'s specific attacks on Plaintiff and other females.  *See Roe*

12   *ex. Rel. Callahan v. Gustine Unified School Dist. (Callahan)*, 678 F. Supp. 2d 1008, 1026–27

13   (E.D. Cal. 2009) (rejecting arguments that harassment did not amount to gender-based

14   discrimination where it included actions that might be motivated by age and/or "class standing,"

15   as animus based on such categories need not be mutually exclusive).  Viewing these allegations in

16   the light most favorable to Plaintiff, the Court finds Plaintiff has alleged sufficient allegations to

17   show she was subjected to harassment of a "sexual" nature.

18                    *ii.    Deprivation of an Educational Opportunity*

19         Having determined E.H.'s harassment of Plaintiff was "sexual" in nature, the Court next

20   turns to whether the sexual harassment was severe, pervasive, and objectively offensive to the

21   point that it undermined and detracted from Plaintiff's educational experience, such that she was

22   denied equal access to the school's resources and opportunities.  *Davis,* 526 U.S. at 651.

23   Defendants argue Plaintiff fails to show she was deprived of any educational opportunities.  (*See*

24   ECF No. 9-1 at 6–7.)  Specifically, Defendants contend that, following the alleged attacks,

25   Plaintiff continued to attend school without incident until "for reasons that are not related to any

26   alleged sexual harassment, Plaintiff's mother decided to home-school her."  (*Id.*)  Thus,

27   Defendants argue, any "lost educational opportunity" was "due to Plaintiff's *parents'* unilateral

28   decision to remove Plaintiff from school."  (ECF No. 12 at 5).  Implicit in this argument is the

1    contention that E.H.'s harassment of Plaintiff did not rise to a level of severity or pervasiveness

2    that would effectively deny her education.  In opposition, Plaintiff asserts Defendants

3    "completely ignore the facts alleged."  (ECF No. 11 at 8.)  The Court agrees with Plaintiff.

4         First, the Court finds Plaintiff has alleged sufficient facts evincing sexual harassment

5    consistent with the *Davis* severity and pervasiveness requirement.  *See Davis*, 526 U.S. at 631.

6    "[T]here is no magic number of incidents required to establish a hostile environment claim."

7    *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 789 (7th Cir. 2007); *Vance v. Spencer Cty.*

8    *Pub. Sch. Dist.*, 231 F.3d 253, 259 n.4 (6th Cir. 2000) (in some cases, even one incident can

9    satisfy a claim).  Rather, determining whether conduct amounts to a hostile environment

10   characterized by severe, persistent, and objectively offensive gender-based harassment depends

11   on a variety of factors, including, but not limited to, the ages of the harasser(s) and victim(s),

12   number of individuals involved, and the type, frequency, and duration of the conduct.  *Davis*, 526

13   U.S. at 651.  As previously noted, this is a highly factual and context-specific determination,

14   begging consideration of a full "constellation of surrounding circumstances, expectations, and

15   relationships."  *Id.*

16        Here, Plaintiff alleges she was repeatedly pushed, shoved, punched, hit, kicked, and spit

17   on by E.H., from the fall of 2017 through February 2018.  (ECF No. 1 ¶¶ 13, 17, 37, 71.)  E.H.

18   also passed explicit notes about Plaintiff's body and appearance to other children.  (*Id.* at ¶ 13.)

19   In once instance, E.H. passed a note about Plaintiff that stated she was "not sexy," "a bitch," and

20   a "piece of shit."  (*Id.*)  In another instance, E.H. discussed Plaintiff's breasts with others, and

21   whether or not she wore a bra.  (*Id.* at ¶ 15.)  And, on four separate occasions, E.H. pushed

22   Plaintiff to the ground, jumped on her back with his thighs around her, and grabbed her breasts

23   with his hands under her clothing.  (*Id.* at ¶¶ 18, 37, 71.)  These allegations are sufficient to

24   establish a pattern of sexual harassment that satisfies the severity and pervasiveness requirement

25   set forth in *Davis*.  *See Davis*, 526 U.S. at 633–36, 653 (actions in which male student fondled a

26   female student's breasts, told her "I want to get into bed with you" and "I want to feel your

27   boobs," and placed a door stop in his pants and acted in a suggestive manner toward her

28   amounted to severe, pervasive, and objectively offensive conduct); *Annamaria M.*, 2006 WL

1    1525733, at *3 (severe and pervasive harassment sufficiently alleged where plaintiff was

2    subjected to multiple lewd comments and gestures by other students on a daily basis); *Doe v.*

3    *Town of Stoughton (Stoughton)*, No. 12-10467-PBS, 2013 WL 6195794, at *2 (D. Mass. Nov. 25,

4    2013) (circulation of nude photos of plaintiff amongst multiple students, followed by several

5    months of gender-charged name-calling such as "slut" and "whore," speaking to the plaintiff

6    about the photos in a sexually demeaning manner, and pointing, whispering, and staring at the

7    plaintiff constituted severe and pervasive sexual harassment).

8         Second, the Court finds Plaintiff has sufficiently identified educational opportunities and

9    benefits of which she was effectively deprived as a result of the foregoing circumstances

10   presented.  A deprivation can be found if there is a "concrete, negative effect" on the plaintiff's

11   ability to receive an education.  *See Davis*, 526 U.S. at 654.  Examples of a negative impact on

12   access may include dropping grades, being diagnosed with behavioral and/or anxiety disorders,

13   and becoming homebound or hospitalized due to harassment, physical violence, or sexual assault.

14   *See Callahan*, 678 F. Supp. 2d at 1028 (collecting cases); *see also Fennel v. Marion Indep. Sch.*

15   *Dist.*, 804 F.3d 398, 410 (5th Cir. 2015) (plaintiff suffered from anxiety, required alternative

16   study arrangements, and was ultimately withdrawn from school and moved to another district).

17   Indeed, courts in this District have previously noted the mere possibility of an interaction with an

18   attacker may be considered sufficiently severe and pervasive harassment so as to deprive a child

19   of equal access to school resources and opportunities.  *See Callahan*, 678 F. Supp. 2d at 1028–29;

20   *see also L.E. v. Lakeland Joint Sch. Dist. #272 (Lakeland)*, 403 F. Supp. 3d 888, 903 (D. Idaho

21   2019) ("the mere fact that [the victim] continued to see and interact with his attackers at school

22   may be enough to satisfy this element."); *Doe ex rel. Doe v. Coventry Board of Education*

23   *(Coventry)*, 630 F. Supp. 2d 226 (D. Conn. 2009) (same).

24        Here, Plaintiff alleges that, before E.H. started harassing her, she was "an exemplary

25   advanced student" enrolled in the school's "Rapid Learner Program," which was specific to Del

26   Paso Manor Elementary and not offered at all schools.  (ECF No. 1 ¶¶ 16, 38.)  Plaintiff also

27   "loved attending school, and routinely slept through the night undisturbed."  (*Id.* at ¶ 16.)  As

28   E.H.'s aforementioned conduct progressed, Plaintiff purportedly began faking sickness and

making other excuses to avoid going to school, she began having problems sleeping alone at night and clung to her parents, and her school performance declined.  (*Id.* at ¶¶ 16, 44, 53, 61, 71.) Plaintiff further alleges that, following the four attacks by E.H., she was forced to remain in the same classroom as her attacker, where she witnessed him "jumping on and knocking down other girls."  (*Id.* at ¶¶ 26, 92.)  Witnessing such actions could reasonably trigger Plaintiff's memories of her own attack, causing her to experience additional distress.  *See* Cal. Educ. Code § 49000 (legislative finding and declaration, in part, that "[c]hildren of school age are at the most vulnerable and impressionable period of their lives.").  Indeed, Plaintiff alleges that she "lived in daily fear that she would be victimized again," and was further traumatized when she was forced to ride in a vehicle in close proximity to her attacker on a fieldtrip.  (*See* ECF No. 1 ¶¶ 26–27, 42.)  As a result, Plaintiff "suffered severe emotional distress, which has required psychological care," was removed from school to attend home-schooling, and was ultimately transferred to another school that did not have the Rapid Learner Program.  (*See id.* at ¶¶ 28, 38, 44, 53, 71–72, 77, 86.)  Based on these allegations, it is apparent to this Court that Plaintiff was removed from school because her "emotional state and safety were at [] risk" following the field trip during which she was "trapped in a vehicle with [her attacker]" (ECF No. 11 at 9), and not "for reasons that are not related to any alleged sexual harassment," as Defendants contend (ECF No. 9-1 at 6).

In sum, given the severity of the attacks and E.H.'s continued harassment of other girls, the mere fact that Plaintiff and E.H. were kept in the same classroom and placed in the same car could reasonably be found to constitute pervasive, severe, and objectively offensive harassment so as to deny Plaintiff equal access to school resources and opportunities.  *See Callahan*, 678 F. Supp. 2d at 1028; *Coventry*, 630 F. Supp. 2d at 232–34; *Lakeland*, 403 F. Supp. 3d at 903.

### iii.    Deliberate Indifference

Finally, Defendants argue Plaintiff cannot make out a claim under Title IX or § 220 because there is no reasonable inference of deliberate indifference by any Defendant.  (ECF No. 9-1 at 7.)  Within the context of a student-on-student harassment claim, deliberate indifference is established when "the school's 'response to the harassment or lack thereof [was] clearly unreasonable in light of the known circumstances.'"  *Karasek*, 956 F.3d at 1105 (citing *Davis*,

1    526 U.S. at 648).  Moreover, the school's deliberate indifference must have "subject[ed the

2    plaintiff] to harassment."  *Id.* (citing *Davis*, 526 U.S. at 644) ("Deliberate indifference must, at a

3    minimum, cause students to undergo harassment or make them liable or vulnerable to it.").  As

4    the Ninth Circuit found, this is a "fairly high standard — a 'negligent, lazy or careless' response

5    will not suffice."  *Id.* (citing *Oden v. N. Marianas Coll.*, 440 F.3d 1085, 1089 (9th Cir. 2006)).

6    Rather, "the plaintiff must demonstrate that the school's actions amounted to 'an official decision

7    . . . not to remedy' the discrimination."  *Id.*

8         School administrators are given substantial deference when determining a disciplinary

9    response for student-on-student harassment.  *Lakeland*, 403 F. Supp. 3d at 906.  Namely, "an

10   aggrieved party is not entitled to the precise remedy that he or she would prefer."  *Oden*, 440 F.3d

11   at 1089.  Nevertheless, even though no particular response is required, and even though the

12   school district is not required to eradicate all sexual harassment, if "an institution either fails to

13   act, or acts in a way which could not have reasonably been expected to remedy the violation, then

14   the institution is liable for what amounts to an official decision not to end discrimination."  *Doe*

15   *A. v. Green (Green)*, 298 F. Supp. 2d 1025, 1035 (D. Nev. 2004); *see also S.G. v. San Francisco*

16   *Unified Sch. Dist.*, No. 17-cv-05678-EMC, 2018 WL 1876875, at *7 (N.D. Cal. Apr. 19, 2018)

17   (citing U.S. Department of Education, Office for Civil Rights, *Revised Sexual Harassment*

18   *Guidance: Harassment of Students by School Employees, Other Students, or Third Parties* (Jan.

19   19, 2001)) (schools have an obligation to take "reasonable, timely, age-appropriate, and effective

20   corrective action, including steps tailored to the specific situation," such as "remedy[ing] the

21   effects of the harassment of the victim.").  Thus, continuing to utilize the same response after it

22   has been shown to be ineffective, not responding at all, or utilizing a "minimalist response" may

23   demonstrate deliberate indifference.  *Garcia ex rel. Marin v. Clovis Unified Sch. Dist. (Garcia)*,

24   No. 1:01-cv-1924 AWI SMS, 2009 WL 2982900, at *9 (E.D. Cal. Sept. 14, 2009).

25        Finally, deliberate indifference is a fact-intensive inquiry that is often a question for the

26   jury's determination.  *Roe v. Gustine Unified Sch. Dist. (Gustine)*, 678 F. Supp. 2d 1008, 1038

27   (E.D. Cal. 2009); *Garcia*, 2009 WL 2982900, at *9; *Lilah R. ex rel. Elena A. v. Smith (Lilah)*, No.

28   11-01860 MEJ, 2011 WL 2976805 (N.D. Cal. Jul. 22, 2011); *see also Green*, 298 F. Supp. 2d at

1036 (collecting Ninth Circuit cases in which deliberate indifference was determined to be a

question for the jury). However, the Supreme Court has acknowledged that "[i]n an appropriate

case, there is no reason why courts, on a motion to dismiss, for summary judgment, or for a

directed verdict, could not identify a response as not 'clearly unreasonable' as a matter of law."

*Davis*, 526 U.S. at 649.

Here, the Court is not convinced that the issue of deliberate indifference is suitable for

resolution at the pleading stage. *See Green*, 298 F. Supp. 2d at 1036. Defendants argue that they

acted responsibly and effectively to prevent harm to Plaintiff after each reported incident. (ECF

No. 12 at 6.) However, an evaluation of deliberate indifference requires consideration of the

"constellation of surrounding circumstances," as opposed to viewing each incident in isolation.

*Davis*, 526 U.S. at 651–52; *see also Wormuth v. Lammersville Union Sch. Dist.*, 305 F. Supp. 3d

1108, 1130 (E.D. Cal. 2018) (on negligence claim, holding "[t]hat A.S.'s mode of harassment

changed from hits and slaps to inappropriate bathroom touching does not render the latter

unforeseeable."). Furthermore, the Court finds Plaintiff has alleged sufficient facts to support the

plausible inference that District's response to the known harassment was deficient or not

reasonably expected to remedy the violation. *Karasek*, 956 F.3d at 1105; *Garcia*, 2009 WL

2982900, at *9.

For example, Plaintiff alleges that, after Zamora confiscated E.H.'s crude notes, he

progressed to verbally discussing Plaintiff's breasts with other students. (ECF No. 1 ¶¶ 13, 15.)

This suggests that merely confiscating notes was insufficient to curb E.H.'s harassing behavior.

*Green*, 298 F. Supp. 2d at 1035. After Smith and Zamora were made aware of E.H.'s discussions

about Plaintiff's breasts, the school told Plaintiff's parents its staff "were making sure there were

no interactions between [Plaintiff] and E.H. and that they were kept separated," and that yard duty

staff was "aware of the need for heightened supervision."[1] (ECF No. 1 ¶¶ 13, 15.) The

---

[1] Defendants assert that staff "*intervened*," and "*worked* to make sure that there were no
inappropriate interactions between Plaintiff and E.H. *by keeping them separated and heightening
supervision*." (ECF No. 9-1 at 7 (emphasis added).) But, as noted herein, this assertion
misconstrues the facts actually alleged in the Complaint. Therefore, the Court does not find it
reasonable to infer, as Defendants argue, that staff followed through on its representation that it

1  Complaint does not, however, allege that staff actually took any actions to keep Plaintiff and E.H.

2  separated.  To the contrary, Plaintiff alleges "[n]o additional staff was assigned to the classroom

3  to provide added supervision."  (*See id.* at ¶ 26.)  Furthermore, Plaintiff alleges E.H.'s conduct

4  escalated from that point to physical violence and four sexual assaults that occurred on the

5  playground and in the classroom, where E.H. was permitted to be with Plaintiff, "unaccompanied

6  and unsupervised."  (*Id.* at ¶¶ 17–18, 26, 37, 46.)  There are also no allegations showing

7  Defendants took any action in response to E.H.'s physical attacks on Plaintiff and other students

8  (i.e., the punching, kicking, and spitting, and the knocking down of other girls) after such attacks

9  were reported to the school.  (*See id.* at ¶¶ 17, 19, 26.)  Similarly, after Plaintiff's mother reported

10 the sexual attacks to Smith (*id.* at ¶ 21), the Complaint does not allege any facts showing

11 responsive action was taken.  To the contrary, Smith represented to Plaintiff's parents that E.H.

12 had been removed from Plaintiff's classroom, but Smith did not actually remove E.H. from

13 Plaintiff's classroom.[2]  (*Id.* at ¶¶ 19–23.)  Plaintiff's allegation that "E.H. was allowed to continue

14 in [the same classroom as Plaintiff] without repercussions" and was even assigned to the same

15 carpool as Plaintiff for a school field trip (*id.* at ¶¶ 26–27) also supports a reasonable inference

16 that Defendants declined to take disciplinary action against E.H. or make any efforts to keep E.H.

17 away from Plaintiff.  Based on the facts reflecting E.H.'s continued and escalating conduct

18 against Plaintiff, it may be plausibly inferred that initially confiscating notes but merely

19 acknowledging the subsequent conduct when it was reported, and promising action but not

20

21 ─────────────────

22 would keep E.H. separated from Plaintiff, or that it took any further action beyond merely
   acknowledging the "need" for heightened supervision.

23 [2]     On reply, Defendants additionally argue for the first time that their responses were
   appropriate because California Education Code § 48900.2 prohibits school administrators from
24 suspending or expelling third-grade students, like E.H., for alleged acts of sexual harassment.
   (ECF No. 12 at 6.)  The Court need not consider arguments raised for the first time in a reply
25 brief.  *See Lane v. Dep't of Interior*, 523 F.3d 1128, 1140 (9th Cir. 2008).  Regardless, this
   argument falls flat where Defendants fail to address the alleged failure to keep Plaintiff and E.H.
26 separated, provide for "heightened" supervision, or even transfer E.H. to a different classroom —
   all alternative actions to suspension or expulsion which were undisputedly within the school's
27 authority to take, and which actions the school initially represented to Plaintiff's parents it would
   take.
28

15

1  actually taking that action "could not have reasonably been expected to remedy the violation."

2  *Green*, 298 F. Supp. 2d at 1035; *Garcia*, 2009 WL 2982900, at *9.

3          Defendants' final argument against deliberate indifference is that a reasonable inference

4  must be drawn that their actions were effective because Plaintiff does not allege any further

5  problems occurred after the fourth sexual attack was reported to Smith.  (ECF No. 12 at 6.)  But

6  at this stage in the pleadings, all reasonable inferences must be drawn in *Plaintiff's* favor.  *Retail*

7  *Clerks*, 373 U.S. at 753 n.6.  Here, Plaintiff alleges that, when her parents requested E.H. be

8  removed from Plaintiff's classroom, Smith denied their request and informed them that Plaintiff

9  could either attend school in the same classroom as her attacker or be home-schooled.  (ECF No.

10  1 ¶¶ 24–25.)  Given these two choices, Plaintiff's parents ultimately chose to home-school their

11  daughter and eventually transferred her to another school.  (*Id.* at ¶ 38.)  Thus, the reasonable

12  inference this Court reaches is that E.H.'s harassment of Plaintiff ceased after the fourth sexual

13  attack because Plaintiff's parents removed her from the school, not because of Defendants'

14  "effective" response to the harassment.

15          In sum, while District must be given substantial deference in determining which

16  disciplinary response to utilize, *Lakeland*, 403 F. Supp. 3d at 906, it nevertheless has an

17  obligation to take some reasonable, corrective action.  *Garcia*, 2009 WL 2982900, at *9.  On

18  these facts, it appears that no disciplinary or remedial action was taken in response to the known

19  harassment, other than Zamora's confiscation of E.H.'s notes at the initial stages of E.H.'s

20  harassment of Plaintiff.  The Court finds such a "minimalist response" could not have reasonably

21  been expected to remedy the harassment, and therefore amounts to an "official decision not to end

22  discrimination."  *Karasek*, 956 F.3d at 1105; *Green*, 298 F. Supp. 2d at 1035; *Garcia*, 2009 WL

23  2982900, at *9.  Accordingly, Plaintiff has alleged facts sufficient to show District was

24  deliberately indifferent to the risk of sexual harassment by E.H. and that District's indifference to

25  the situation caused Plaintiff to suffer further harassment and harm.  The Court therefore DENIES

26  Defendants' Motion to dismiss Claims One and Three as asserted against District.

27  ///

28  ///

16

B.      Section 1983 Claims for Violations of Title IX and the Equal Protection

Clause, and Failure to Train (Claim Two)

42 U.S.C. § 1983 allows persons to sue individuals or municipalities acting under the color of state law for violations of rights guaranteed under the Constitution or federal law.  *See* 42 U.S.C. § 1983; *Fitzgerald*, 555 U.S. at 252.  In a "personal capacity" claim, Plaintiff must allege facts showing deprivation of her federally-secured rights resulted from conduct directly attributable to each specific Defendant.  *See Fitzgerald*, 555 U.S. at 252; *Woods v. Chapel Hill-Carrboro City Sch. Bd. of Educ.*, No. 1:19-cv-1018, 2020 WL 3065253, at *6 (M.D.N.C. Jun. 9, 2020); *see also Walsh v. Tehachapi Unified Sch. Dist.*, 827 F. Supp. 2d 1107, 1116 (E.D. Cal. 2011) (supervisory personnel cannot be held liable under § 1983 for the actions of their employees under the theory of *respondeat superior*); *see also Iqbal*, 556 U.S. at 676 (plaintiff must show "each Government-official defendant, through the official's own individual actions, ha[d] violated the Constitution.").  In an "official capacity" claim, by contrast, the municipality itself causes the Constitutional violation through a policy or custom.  *Monell v. New York Dep't of Social Services*, 436 U.S. 658, 690 n.55, 691 (1978).  In this narrow instance, the governmental entity or its agents act as the "moving force" behind the deprivation, and the entity remains liable for the actions of its agents.  *Kentucky v. Graham*, 473 U.S. 159, 165–67 (1985).  If a complaint does not explicitly mention the capacity in which officials are sued but asserts specific factual allegations against them, courts "presume that officials necessarily are sued in their personal capacities where those officials are named in a complaint."  *See Romano v. Bible*, 169 F.3d 1182, 1186 (9th Cir. 1999).

Here, Plaintiff has alleged — and Defendants do not dispute — that Smith, Kern, and Zamora are employees of a public school system and are being sued for their acts under color of state law as principal, superintendent, and teacher, respectively, in violating Plaintiff's rights. (*See* ECF No. 1 ¶¶ 7–9, 51.)  Though Plaintiff does not so specify, based on the allegations, the Court presumes Plaintiff is suing the individual Defendants under § 1983 in their personal capacities.  *Romano*, 169 F.3d at 1186.  Plaintiff asserts § 1983 claims against each of the individual Defendants for violations of her rights under Title IX and the Equal Protection Clause

17

1   of the Fourteenth Amendment, as well as a failure to train claim (ECF No. 1 at 9–11), which the

2   Court discusses in turn.

3                                    i.      *Section 1983 Claims Relating to Title IX*

4          Plaintiff may assert a § 1983 claim against each individual Defendant in his or her

5   capacity to enforce rights under Title IX.  *See Nicole M. v. Martinez Unified Sch. Dist. (Nicole*

6   *M.)*, 964 F. Supp. 1369, 1381 (N.D. Cal. 1997), *superseded by statute on other grounds*, (citing

7   *Seamons v. Snow*, 84 F.3d 1226, 1234 (10th Cir. 1996)).  In moving to dismiss Plaintiff's § 1983

8   claims, Defendants simply argue the claims fail against the individual Defendants for the same

9   reasons as asserted with respect to the Title IX claim against District; namely, Defendants argue

10  Plaintiff fails to show how each individual Defendant was deliberately indifferent.  (ECF No. 9-1

11  at 8.)  For the reasons previously discussed, the Court finds Plaintiff has sufficiently alleged facts

12  showing she was subjected to sexual harassment that was severe, pervasive, and objectively

13  offensive to the point that it undermined and detracted from Plaintiff's educational experience,

14  thus triggering her rights under Title IX.  *Davis*, 526 U.S. at 644–50.  Applying the deliberate

15  indifference standard set forth in *Davis* to determine whether any Defendant failed to enforce

16  Plaintiff's rights under Title IX, the Court finds Plaintiff states a claim against Smith and Zamora,

17  but not Kern, as follows.

18                                   a)   *Principal Smith*

19         With respect to Plaintiff's claim against Smith, Plaintiff's non-conclusory allegations

20  indicate that Smith was aware of the harassment because he was informed by Zamora and

21  Plaintiff's parents about E.H.'s notes about Plaintiff, the physical attacks, and the four sexual

22  attacks previously discussed.  (*See* ECF No. 1 ¶¶ 13, 15–17, 19, 21.)  While Plaintiff does not

23  allege it was within Smith's authority or capacity as principal to "assign additional staff to the

24  classroom" or require heightened supervision on the yard (*see id.* at ¶¶ 15, 26), it is nevertheless

25  reasonable to infer that Smith was in a position to take *some* action to prevent the harassment.

26  Namely, it may be inferred that Smith could have disciplined E.H. in some way or transferred him

27  to another classroom by virtue of Plaintiff's allegations that Smith denied the request to remove

28  E.H. from Plaintiff's classroom and refused to discipline E.H. in any way.  (*See id.* at ¶¶ 23–25.)

                                             18

1   At this stage in the pleadings, the Court cannot say that Smith's alleged refusal to take such action

2   in light of the known harassment does not amount to deliberate indifference.  *Garcia*, 2009 WL

3   2982900, at *9.  Thus, Plaintiff has adequately pleaded a § 1983 claim against Smith with respect

4   to her rights under Title IX and Defendants' Motion to Dismiss as to this claim is DENIED.

5   *b)  Teacher Zamora*

6   With respect to Zamora, Plaintiff's non-conclusory allegations indicate that Zamora

7   confiscated E.H.'s notes about Plaintiff, reported E.H.'s comments about Plaintiff's breasts to

8   Smith, and reported some instances of E.H.'s physical violence and sexual attacks to Smith.  (*See*

9   ECF No. 1 ¶¶ 13 (confiscated notes), ¶¶ 15, 19 (incidents reported).)  The Complaint does not

10   indicate that Zamora responded to reports she received that E.H. was punching, kicking, and

11   spitting on Plaintiff and other children or that E.H. knocked down other girls.  (*Id.* at ¶¶ 17, 26.)

12   Despite Zamora's repeated reporting of E.H.'s conduct to Smith, E.H.'s harassment of Plaintiff

13   not only continued, but escalated over time.  Yet the Complaint does not indicate Zamora took

14   any disciplinary action against E.H., other than continuing to report E.H.'s conduct to Smith.

15   "[W]hen the circumstances are such that a reasonable teacher would seriously question whether

16   school administrators appreciate the severity of a particular problem, it is incumbent upon that

17   teacher to take additional steps to apprise school administrators of the situation."  *Annamaria M.*,

18   2006 WL 1525733, at *8 (finding plaintiff sufficiently alleged deliberate indifference against

19   teacher who repeatedly sent harassing students to principal's office but nothing more, despite

20   knowledge of their continued harassment of the plaintiff).  Here, the Court acknowledges that a

21   more developed record might ultimately demonstrate Zamora's authority as a teacher was quite

22   limited with respect to taking disciplinary or other direct measures likely to curb persistent peer

23   sexual harassment.  *See id.*  Nevertheless, construing the Complaint in the light most favorable to

24   Plaintiff, the Court concludes Plaintiff has adequately alleged that merely confiscating notes and

25   reporting incidents to Smith but taking no further action amounted to a "minimalist response" on

26   Zamora's part that could not have reasonably been expected to remedy the ongoing harassment.

27   *Karasek*, 956 F.3d at 1105; *Green*, 298 F. Supp. 2d at 1035; *Garcia*, 2009 WL 2982900, at *9.

28   Accordingly, Defendants' Motion to Dismiss as to this claim is DENIED.

*c)  Superintendent Kern*

With respect to Plaintiff's § 1983 claim against Kern, Plaintiff alleges, generally, that Kern as well as Smith and Zamora failed to provide an environment free from discrimination and harassment, failed to take corrective action, and ignored the many instances of student-on-student harassment at the school.  (ECF No. 1 ¶¶ 59–60.)  However, these conclusory assertions, without more, are insufficient to state a claim for liability pursuant to § 1983.  *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.  Nowhere in the Complaint does Plaintiff allege facts showing that Kern was personally made aware of any of the instances of purported harassment, let alone that Kern acted or refused to act in response to such harassment, or had the capacity to do so.  *See Oona by Kate S. v. McCaffrey*, 143 F.3d 473, 477 (9th Cir. 1998) ("A supervisor may be found liable under § 1983 if the supervisor is aware of a specific risk of harm to the plaintiff.").  Thus, Plaintiff has not alleged sufficient facts to establish Kern personally acted with deliberate indifference with respect to Plaintiff's Title IX rights.  Accordingly, the Court GRANTS Defendants' Motion to Dismiss Plaintiff's § 1983 claim under Title IX as asserted against Kern.  This dismissal is with leave to amend.  *Lopez*, 203 F.3d at 1130.

*ii.    Section 1983 Claims Relating to the Equal Protection Clause of the Fourteenth Amendment*

To state a § 1983 equal protection violation, Plaintiff must show that each Defendant, under color of state law, discriminated against her on the basis of her sex, and that such discrimination was either intentional or occasioned by deliberate indifference.  *Mansourian v. Bd. of Regents of the Univ. of California at Davis*, 757 F. Supp. 2d 1030, 1046 (E.D. Cal. 2010) (citing *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1134–35 (9th Cir. 2003)).  The same standard for deliberate indifference under Title IX is applicable here; namely, deliberate indifference can be found if a school official or administrator "responds to known peer harassment in a manner that is … clearly unreasonable."  *Flores*, 324 F.3d at 1135 (citing *Davis*, 526 U.S. at 649) (internal quotations omitted).

Plaintiff alleges the individual Defendants' actions were driven by gender discrimination.  (*See* ECF No. 1 ¶ 51.)  Defendants do not dispute that Plaintiff, as a female student, is a member

1  of an identifiable class.  *See Jackson*, 544 U.S. at 173–74 (in Title IX context, deliberate

2  indifference to sexual harassment of a student by another student squarely constitutes

3  discrimination on the basis of sex).  Instead, Defendants move to dismiss Plaintiff's § 1983 Equal

4  Protection claim on the basis that Plaintiff fails to establish either intentional discrimination or

5  deliberate indifference on the part of any individual Defendant with respect to E.H.'s harassment

6  of Plaintiff.  (ECF No. 9-1 at 8.)

7  However, for the same reasons discussed with respect to Plaintiff's § 1983 claims relating

8  to Title IX, the Court finds Plaintiff has adequately pleaded deliberate indifference by Smith and

9  Zamora, but not by Kern.  *See Flores*, 324 F.3d at 1135; *Davis*, 526 U.S. at 649.  Accordingly, the

10  Court DENIES Defendants' Motion to Dismiss Plaintiff's § 1983 Equal Protection claims against

11  Smith and Zamora, and GRANTS Defendants' Motion with respect to Plaintiff's § 1983 Equal

12  Protection claim against Kern.  Dismissal of the claim against Kern is with leave to amend.

13  *Lopez*, 203 F.3d at 1130.

14  *iii.    Section 1983 Failure to Train Claim*

15  To establish a § 1983 claim for failure to train against a municipality, the plaintiff must

16  show the municipality's "failure to train its employees in a relevant respect evidences a

17  'deliberate indifference' to the rights of its inhabitants."  *City of Canton v. Harris (Canton)*, 489

18  U.S. 378, 389 (1989).  As to an official in his individual capacity, a failure to train claim may

19  similarly be asserted by showing each individual Defendant was deliberately indifferent to the

20  need to train subordinates, and the lack of training actually caused the constitutional harm.  *See*

21  *Flores v. Cty. of Los Angeles*, 758 F.3d 1154, 1159 (9th Cir. 2014).  Under this standard, a

22  plaintiff must allege facts showing that each defendant "disregarded the known or obvious

23  consequence" that would occur should he fail to provide training.  *Id.* (citing *Connick v.*

24  *Thompson*, 563 U.S. 51, 62 (2011)) (on municipal liability, a pattern of similar constitutional

25  violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference

26  for purposes of failure to train claim).

27  Here, Plaintiff only asserts her § 1983 claim for failure to train against Smith, Kern, and

28  Zamora in their individual capacity and does not assert a failure to train claim against District.

1   (*See* ECF No. 1 ¶¶ 55–57.)  Plaintiff alleges Kern, Smith, and Zamora "inadequately

2   communicated the anti-harassment and bullying policies to students and school personnel."  (*Id.*

3   at ¶ 55.)  In moving to dismiss, Defendants argue Plaintiff's failure to train claim is "comprised of

4   three paragraphs, none of which offer any facts," such as how each individual Defendant

5   "'inadequately communicated' any policies to students."[3]  (ECF No. 9-1 at 8.)  The Court agrees

6   with Defendants.  Simply put, the Complaint fails to describe the policies that existed, establish

7   each Defendant's personal authority/responsibility to train subordinates and/or articulate the

8   policies to students, or assert how such policies were communicated and why this communication

9   was inadequate.  Importantly, because Plaintiff does not allege sufficient facts as to when, how,

10  and to whom the polices were (or were not) communicated, she fails to establish the inadequate

11  anti-harassment and bullying training actually caused the constitutional harm.  *See Connick*, 563

12  U.S. at 61–62; *Canton*, 489 U.S. at 391.

13       Based on the aforementioned pleading deficiencies, Plaintiff cannot state a claim for

14  failure to train.  Nevertheless, it appears possible Plaintiff may cure the identified deficiencies

15  through amendment.  *See Lopez*, 203 F.3d at 1130.  Accordingly, the Court GRANTS

16  Defendants' Motion to Dismiss Plaintiff's § 1983 claim against Smith, Kern, and Zamora for

17  failure to train with leave to amend.

18            C.    Negligence (Claim Four)

19       Plaintiff claims Smith, Kern, and Zamora negligently supervised E.H., and that District is

20  vicariously liable for their failure to supervise.  (ECF No. 1 at 15.)  Defendants seek dismissal of

21  the negligence claim on the basis that: (1) Plaintiff fails to identify which Defendant, if any, failed

22  to properly supervise Plaintiff and E.H.; and (2) regardless, Defendants are immune from

23

24  _____

25  [3]      Defendants additionally argue the policies alluded to in the Complaint were posted on the
    district website and disseminated to students and parents in the school handbook, the sole aim of
26  which appears to be to provide this Court "a check on reality."  (ECF No. 9-1 at 8.)  However,
    this information lies outside of the Complaint and, absent a properly supported request for judicial
27  notice, may not be considered at the motion to dismiss stage.  *See Broam v. Bogan*, 320 F.3d
    1023, 1026 (9th Cir. 2003) (citing *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th
28  Cir. 1998)).

1  negligence liability under both state and federal law.  (ECF No. 9-1 at 9–10.)  The Court will

2  examine these arguments in turn.

3          *i.*    *Immunity*

4          *a)*  *California Government Code § 820.2*

5        California Government Code § 820.2 ("§ 820.2") shields public employees from liability

6  for acts or omissions resulting from exercising discretion unless such acts expressly violate a

7  statute.  Cal. Gov't. Code § 820.2.  This "discretionary immunity," while broad, is not limitless.

8  *Wormuth*, 305 F. Supp. 3d at 1130.  It applies only to "basic policy decisions," or "quasi-

9  legislative policy making decisions," not to lower-level, or "ministerial," decisions that merely

10  implement a basic policy already formulated.  *Caldwell v. Montoya*, 10 Cal. 4th 972, 981 (1995);

11  *see also Martinez v. City of L.A.*, 141 F.3d 1373, 1379 (9th Cir. 1998) (citing *Johnson v. State of*

12  *California*, 69 Cal. 2d 782, 796 (1968)).  Elaborating upon the distinction between "policy" and

13  "operational" judgments, the California Supreme Court has held that even if an employee

14  exercises his discretion in deciding to take a specific action, he may be liable for negligently

15  conducting that act.  *See Johnson*, 69 Cal. 2d at 795–97, n.8 (collecting cases); *McCorkle v. City*

16  *of Los Angeles*, 70 Cal. 2d 252, 261 (1969).  The official seeking immunity bears the burden of

17  demonstrating that immunity attaches to a particular function.  *Burns v. Reed*, 500 U.S. 478, 486

18  (1991).

19        Here, Defendants argue they are immune pursuant to § 820.2.  (ECF No. 9-1 at 10.)  Yet

20  Defendants advance no specific arguments with respect to each Defendant, let alone discuss

21  whether each Defendant's acts may be considered "discretionary."  (*See id.*)  Rather, they appear

22  to seek blanket immunity for all Defendants, generally characterizing their actions as

23  discretionary decisions on "whether or not to implement schoolwide policies."  (*See id.*)

24  However, courts in the Ninth Circuit have declined to apply such blanket immunity to all acts or

25  omissions undertaken in response to student-on-student harassment.  *See, e.g., J.E.L. v. San*

26  *Francisco Unified Sch. Dist.*, 185 F. Supp. 3d 1196, 1202 (N.D. Cal. 2016); *Jones v. Kern High*

27  *School Dist.*, No. CV-F-07-1628-OWW-TAG, 2008 WL 3850802, at *28 (E.D. Cal. Aug. 14,

28  2008) (denying immunity based on finding that "the direct and immediate supervision of school

1    children does not involve 'basic policy decisions' or an 'area of quasi-legislative policy

2    making.'"); *Wormuth*, 305 F. Supp. 3d at 1131 (denying blanket immunity to school principal

3    under § 820.2 based on his disciplinary decisions).  Therefore, Defendants' overly-generalized

4    immunity argument fails.  *Id.*  The Court similarly rejects Defendants' argument that all of

5    Plaintiff's deliberate indifference allegations inherently imply Defendants "deliberated" and

6    therefore "'exercised discretion' and 'rendered a considered decision'" (ECF No. 12 at 9), as this

7    argument runs contrary to the aforementioned legal authority.  *See also Caldwell*, 10 Cal. 4th at

8    981 ("California courts do not look at the literal meaning of 'discretionary,' because almost all

9    acts involve some choice between alternatives.") (internal quotations omitted).

10          Furthermore, the Court agrees with Plaintiff that Defendants' immunity argument is

11   premature at this stage in the pleadings.  (ECF No. 11 at 14–15); *see Martinez v. Cty. of Sonoma*

12   *(Sonoma)*, No. 15-cv-01953-JST, 2015 WL 5354071, at *10 (N.D. Cal. Sept. 14, 2015) (denying

13   motion to dismiss based on § 820.2 discretionary immunity because the immunity is narrow and

14   "can generally not be resolved at a motion to dismiss").  Absent a more detailed analysis of how

15   each Defendant's actions involve "basic policy decisions" or "quasi-legislative policy making,"

16   this Court cannot find § 820.2 immunizes Kern, Smith, or Zamora for their alleged supervisory

17   decisions. *See Wormuth*, 305 F. Supp. 3d at 1131 (denying immunity under § 820.2 where

18   defendant failed to provide detailed analysis of purported discretionary actions).  Consequently,

19   the Court also cannot foreclose District's vicarious liability based on the individual Defendants' §

20   820.2 immunity argument at this stage in the litigation.  Accordingly, Defendants' Motion to

21   Dismiss based on § 820.2 immunity is DENIED without prejudice.

22                    *b)   Coverdell Act (20 U.S.C. § 7941 et seq.)*

23          Alternatively, Defendants claim they are immune from negligence liability pursuant to the

24   Paul D. Coverdell Teacher Protection Act of 2001 ("Coverdell Act"), 20 U.S.C. § 7946.  (ECF

25   No. 9-1 at 10.)  The Coverdell Act immunizes teachers, principals, administrators, and other

26   school professionals from liability for harm caused by acts or omissions in connection with

27   controlling or disciplining a student or maintaining order or control in the school.  20 U.S.C. §§

28   7943, 7946.  Specifically, the Coverdell Act provides immunity when the cited conduct: (1) falls

1   within the scope of the school employee's responsibilities; (2) conforms with federal, state, and

2   local laws; (3) falls within what the official is licensed, certified, or authorized to do; (4) involves

3   no willful or criminal misconduct, gross negligence, reckless misconduct, or a conscious, flagrant

4   indifference to the rights or safety of the individual harmed; and (5) the harm was not caused by

5   the school employee's operation of a vehicle.  20 U.S.C. § 7946(a).

6          A plain reading of the Coverdell Act reveals that immunity is limited to teachers and

7   administrators and consequently does not apply to a school district.  20 U.S.C. § 7942; *Wormuth*,

8   305 F. Supp. 3d at 1131–32.  Therefore, District may still be held vicariously liable for the

9   negligence of its school employees, even if they are granted immunity under the Coverdell Act.

10  *See Wormuth*, 305 F. Supp. 3d at 1132 (school district could be vicariously liable for actions of

11  school principal, who was granted Coverdell Act immunity).

12         As to the individual Defendants, the only element the parties dispute is whether Plaintiff's

13  allegations sufficiently establish "gross negligence" so as to negate Coverdell Act immunity.

14  (*See* ECF No. 11 at 16; ECF No. 12 at 9–10.)  Having found the Complaint plausibly alleges

15  Smith and Zamora were each deliberately indifferent to Plaintiff's safety, this Court likewise

16  finds Plaintiff's allegations are sufficient to meet the gross negligence threshold under the

17  Coverdell Act.  *See Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974, 976 (9th Cir. 2011) (deliberate

18  indifference standard is "markedly higher" than gross negligence); *Garcia*, 2009 WL 2982900, at

19  *9 (deliberate indifference "requires conduct that is beyond mere negligence.").  As such, the

20  Court declines to find Coverdell Act immunity forecloses Plaintiff's negligence claims against

21  Smith or Zamora at this stage in the litigation.  *See Sonoma*, 2015 WL 5354071, at *10.

22         With respect to Kern, Plaintiff additionally argues Coverdell Act immunity does not apply

23  to him because of his high-level supervisory position as superintendent.  (ECF No. 11 at 15.)

24  Defendants reply that Kern is immune under the Coverdell Act because he made "lower-level

25  daily supervisory and disciplinary decisions," and that Coverdell Act immunity "has nothing to

26  do with [his] *position*."  (ECF No. 12 at 9.)  In fact, the Complaint fails to allege any non-

27  conclusory facts whatsoever about Kern or his personal involvement in this matter and Plaintiff

28  ///

1   has been granted leave to amend her claims against Kern.  Accordingly, the Court cannot

2   determine whether Coverdell Act immunity applies to Kern at this early stage in the pleadings.

3         For the foregoing reasons, Defendants' motion to dismiss based on immunity under the

4   Coverdell Act is DENIED without prejudice.  Having concluded that neither § 820.2 immunity

5   nor Coverdell Act immunity insulates Defendants from liability, the Court now turns to a

6   discussion of Plaintiff's negligence claim.

7               *ii.*     *Negligence*

8         To state a claim for negligence, Plaintiff must allege: (1) a legal duty to use reasonable

9   care; (2) a breach of that duty; (3) causation; and (4) damages.  *See Ladd v. Cty. of San Mateo*, 12

10   Cal. 4th 913, 917 (1996).  California law imposes a duty on school districts and their employees

11   "to supervise at all times the conduct of the children on the school grounds and to enforce those

12   rules and regulations necessary to their protection."  *Hoff v. Vacaville Unified Sch. Dist.*, 19 Cal.

13   4th 925, 934 (1998); *C.A. v. William S. Hart Union High Sch. Dist. (Hart)*, 53 Cal. 4th 861, 869

14   (2012); *Lucas v. Fresno Unified Sch. Dist.*, 14 Cal. App. 4th 866, 872 (1993) (citing Cal. Educ.

15   Code § 44807 (every teacher in the public schools shall hold pupils to a strict account for their

16   conduct on the way to and from school, on the playgrounds, or during recess)); *see also* 5 CCR §

17   5552 (requiring school principals to provide for supervision on school playgrounds).  The

18   standard of care imposed upon school employees in carrying out this duty is the degree of care

19   "which a person of ordinary prudence, charged with [comparable] duties, would exercise under

20   the same circumstances."  *Hoff*, 19 Cal. 4th at 934; *Hart*, 53 Cal. 4th at 869.  "Either a total lack

21   of supervision or ineffective supervision may constitute a lack of ordinary care on the part of

22   those responsible for student supervision."  *Id.*; *Wormuth*, 305 F. Supp. 3d at 1132 (citing *Dailey*

23   *v. L.A. Unified Sch. Dist.*, 2 Cal. 3d 741, 748–49 (1970)) ("Because a principal task of supervisors

24   is to anticipate and curb rash student behavior, failing to prevent injuries caused by the intentional

25   or reckless conduct of the victim or a fellow student may constitute negligence.") (internal

26   quotations omitted).

27         Finally, under California Government Code § 815.2, a school district is vicariously liable

28   for injuries proximately caused by such negligence.  Cal. Gov't Code § 815.2(a); *Hart*, 53 Cal.

4th at 869 (collecting cases).  Furthermore, California courts have often held that, at the pleading stage, a negligence claim against the school district may survive a motion to dismiss even where the complaint fails to specify which of the district's employees committed the negligent acts or omissions for which the district is allegedly liable.  *See Hart*, 53 Cal. 4th at 872.

Here, Plaintiff contends Kent, Smith, and Zamora were "responsible for student supervision" and failed to prevent "the known and rampant harassment and bullying of female students [and Plaintiff], including sexual harassment and assault," as detailed herein.  (ECF No. 1 ¶¶ 85–86.)  As a result of Defendants' breach of their duties, Plaintiff claims she suffered serious psychological injuries, declining grades, lost her opportunity to participate in the advanced Rapid Learner Program, and required extensive counseling.  (*Id.* at ¶¶ 86–87.)  In moving to dismiss, Defendants argue Plaintiff "offers only legal conclusions" and fails to identify the ineffective supervision committed by any Defendant.  (ECF No. 9-1 at 10.)  Defendants do not present argument as to the other negligence elements.  (*See id.*)  The Court finds Plaintiff adequately states a negligence claim against Smith and Zamora, but not Kern.

### a)  Duty

First, Defendants had a duty to supervise Plaintiff and E.H. "on school grounds and to enforce those rules and regulations necessary to their protection."  *Hoff*, 19 Cal. 4th at 934; *Hart*, 53 Cal. 4th at 869; *Lucas*, 14 Cal. App. 4th at 872; Cal. Educ. Code § 44807; 5 CCR § 5552. Defendants do not dispute this element and Plaintiff has adequately established the duty applied to them.  Specifically, Plaintiff's allegations reflect that Zamora, as her teacher, was in a position to directly supervise her in the classroom; Principal Smith had at least some authority on matters of discipline and supervision of students; and both were aware of E.H.'s ongoing misconduct and "the need for heightened supervision."  (*See* ECF No. 1 ¶¶ 7, 9, 13, 15, 17, 19, 21–22, 24, 26); *see also* 5 CCR § 5551 (principal is responsible for the supervision and administration of his school). While Plaintiff does not allege specific facts showing what Kern's supervisory responsibilities were, the Court nevertheless finds this element is also met with respect to Kern, based on the broad language of California law imposing a duty "on school districts and their employees." *Hoff*, 19 Cal. 4th at 934; *see also Hart*, 53 Cal. 4th at 869, 871 (duty applies not only to school

1   instructional personnel, but also superintendent and other administrative personnel who oversee

2   the overall functioning of the school).  Thus, Plaintiff has sufficiently alleged the existence of a

3   duty.

4                                   *b)   Breach and Causation*

5          Second, Plaintiff has sufficiently established breach and causation against Smith and

6   Zamora.  Defendants argue Plaintiff fails to identify the "ineffective supervision" or the instance

7   of "lack of ordinary care" that any Defendant committed.  (ECF No. 9-1 at 10.)  With respect to

8   Kern, the Court agrees that the Complaint alleges no facts showing Kern personally had

9   knowledge of E.H.'s harassment or indicating how he failed to uphold his supervisory

10  responsibilities.  Therefore, Plaintiff fails to establish Kern breached any duty owed to Plaintiff.

11  As such, Plaintiff fails to state a negligence claim against Kern.

12         However, the Court finds Plaintiff has alleged facts sufficient to raise the reasonable

13  inference that Smith and Zamora negligently supervised the students.  As previously detailed,

14  Smith and Zamora received multiple reports about bullying, harassment, and assaults by E.H.

15  against Plaintiff and other students.  Yet Smith and Zamora continued to permit E.H. to be in the

16  same classroom with Plaintiff "unaccompanied and unsupervised," no additional staff was

17  assigned to the classroom to provide added supervision, and Smith refused to transfer E.H. to a

18  different classroom or discipline him.  (ECF No. 1 ¶¶ 24, 26, 46.)  As a result of Smith and

19  Zamora's failure to increase supervision or take disciplinary action against him, E.H. continued to

20  attack Plaintiff and other children at school; indeed, his harassment of Plaintiff escalated from

21  crude notes and comments to physical attacks.  (*See id.* at ¶¶ 13, 15, 17–18, 26.)  This result was

22  entirely foreseeable.  *See Wormuth*, 305 F. Supp. 3d at 1132–33 (mode of harassment from hits

23  and slaps to inappropriate bathroom touching did not render the latter unforeseeable for purposes

24  of negligence claim against principal); *see also Dailey*, 2 Cal. 3d at 748–49 (discussing

25  foreseeability of young students' hyperactivity, lack of self-control, and tendency to engage in

26  aggressive and impulsive behavior which exposes them and their peers to the risk of serious

27  harm).

28  ///

1    Furthermore, as noted in the deliberate indifference analysis, Smith and Zamora's

2    "minimalist response" could not have reasonably been expected to remedy the harassment.  This

3    same reasoning supports the finding that Smith and Zamora's supervision was "ineffective" for

4    purposes of Plaintiff's negligence claim.  *Garcia*, 2009 WL 2982900, at *9 (finding deliberate

5    indifference may be shown when defendants utilize a "minimalist response" or "continu[e] to

6    utilize the same response after it has been shown to be ineffective"); *Patel*, 648 F.3d at 974, 976;

7    *see also Wormuth*, 305 F. Supp. 3d at 1132 (upholding, on summary judgment, negligence claim

8    against principal for "negligently supervis[ing] the situation overall" where student was sexually

9    attacked in unsupervised bathroom); *J.H. v. Los Angeles Unified Sch. Dist.*, 183 Cal. App. 4th

10   123, 128–29, 147, 149 (2010) (reversing dismissal of negligent supervision claim against

11   playground supervisor where plaintiff was attacked during recess on playground, despite

12   supervisor's presence on playground).  The Court therefore finds Plaintiff's allegations are

13   sufficient to show Smith and Zamora breached their duty to supervise, and this breach

14   proximately caused the continued harassment and damages noted herein.

15              *c)  Damages*

16   Third, the Court finds Plaintiff has alleged sufficient facts to establish the element of

17   damages.  Specifically, Plaintiff suffered escalating attacks by E.H., ranging from being pushed,

18   shoved, punched, hit, kicked, and spit on (ECF No. 1 ¶¶ 13, 17, 37, 71), to specific instances in

19   which E.H. pushed Plaintiff to the ground, jumped on her back with his thighs around her, and

20   grabbed her breasts with his hands under her clothing (*id.* at ¶¶ 18, 37, 71).  Additionally, Plaintiff

21   claims she suffered a significant decline in her physical and emotional health, as well as academic

22   performance, ultimately leading to her home-schooling and transfer to another school.  (*Id.* at ¶¶

23   14, 16, 23, 26–27, 44, 86.)  Because she transferred to another school, Plaintiff lost her

24   opportunity to participate in the advanced Rapid Learner Program.  (*Id.* at ¶¶ 38, 44, 86.)

25   Furthermore, as a result of E.H.'s continued harassment, Plaintiff required extensive counseling.

26   (*Id.* at ¶¶ 28, 86.)  Defendants make no argument with respect to this element.  Therefore, the

27   Court finds Plaintiff has sufficiently alleged damages resulting from Smith and Zamora's

28   ///

1  negligent supervision.  *See Wormuth*, 305 F. Supp. 3d at 1132–33; *J.H.*, 183 Cal. App. 4th at

2  148–48.

3        In sum, the Court finds Plaintiff's allegations are sufficient to support the reasonable

4  inference that a lack of ordinary care on the part of Smith and Zamora with respect to their duty to

5  supervise caused foreseeable damages to Plaintiff.  Plaintiff fails to similarly allege sufficient

6  facts against Kern.  Accordingly, Plaintiff states a negligence claim against Smith and Zamora,

7  but not Kern.

8                 *d)  Vicarious Liability of District*

9        Finally, Plaintiff argues — and Defendants do not dispute — that District may be

10  vicariously liable for the negligence of its employees pursuant to California Government Code §

11  815.2 and California Education Code § 44807.  (*See* ECF No. 1 at 15; ECF No. 9-1 at 9–10.)

12  Based on the aforementioned legal authorities, the Court finds Plaintiff has adequately asserted a

13  vicarious liability claim against District for Smith and Zamora's alleged negligent conduct.  Cal.

14  Gov't Code § 815.2(a); Cal. Edu. Code § 44807; *Hart*, 53 Cal. 4th at 869, 872.

15        For these reasons, the Court DENIES Defendants' Motion to Dismiss Plaintiff's

16  negligence claim as asserted against Smith, Zamora, and District, and GRANTS the Motion with

17  respect to Plaintiff's negligence claim against Kern.  Dismissal of the negligence claim against

18  Kern is with leave to amend.  *Lopez*, 203 F.3d at 1130.

19          D.     <u>Violation of Unruh Civil Rights Act (Claim Five)</u>

20        The Unruh Civil Rights Act ("Unruh Act"), California Civil Code §§ 51 *et seq*., provides

21  that "[a]ll persons . . . no matter what their sex . . . are entitled to the full and equal

22  accommodations, advantages, facilities, privileges, or services in all business establishments of

23  every kind whatsoever."  Cal. Civ. Code § 51.  Consistent with the broad sweep of the statutory

24  language and the California Supreme Court's direction that the term "business establishment" is

25  to be interpreted "in the broadest sense reasonably possible," courts have deemed public schools

26  to be "business establishments" within the purview of the Unruh Act.  *See Isbister v. Boys' Club*

27  *of Santa Cruz, Inc.*, 40 Cal. 3d 72, 78 (1985) (discussing broad language of the Unruh Act);

28  ///

1   *Nicole M.*, 964 F. Supp. 1369, 1388 (N.D. Cal. 1997) (applying Unruh Act to public schools);

2   *Sullivan v. Vallejo Unified Sch. Dist.*, 731 F. Supp. 947, 952–53 (E.D. Cal. 1990) (same).

3          Applying the Unruh Act to public schools, courts have deemed "an inadequate response to

4   complaints of sexual harassment" amounts to a denial of "advantages, facilities, privileges, or

5   services" under the Act.  *Nicole M.*, 964 F. Supp. at 1389; *Michelle M. v. Dunsmuir Joint Union*

6   *Sch. Dist. (Michelle M.)*, No. 2:04-cv-2411-MCE-PAN, 2006 WL 2927485, at *7–8 (E.D. Cal.

7   Oct. 12, 2006) (accepting that allegations of inadequate response can rise to the level of

8   intentional discrimination for purposes of the Unruh Act); *see also Jackson*, 544 U.S. at 173–74

9   (in Title IX context, indifference to sexual harassment of a student by another student squarely

10  constitutes discrimination on the basis of sex.)

11          Here, Plaintiff's Unruh Act claim is based on the alleged deprivation of "the advantages,

12  privileges and services of Del Paso Manor Elementary School" that resulted from E.H.'s

13  unmitigated harassment and Defendants' intentional discrimination against Plaintiff on the basis

14  of her sex.  (ECF No. 1 at 16.)  Defendants do not dispute that the school may constitute a

15  "business establishment" within the meaning of the Unruh Act, but instead seek dismissal of

16  Plaintiff's Unruh Act claim for failure to establish the subjective intent element.  (ECF No. 9-1 at

17  11.)  Defendants argue that Plaintiff's allegations are conclusory and unbelievable for the same

18  reasons articulated with respect to Plaintiff's Title IX and § 200 claims.  (*Id.* at 11–12.)  The

19  Opposition and Reply similarly reiterate the parties' respective arguments as asserted with respect

20  to Plaintiff's Title IX and § 200 claims: Plaintiff contends the facts alleged establish Defendants

21  inadequately responded to complaints of sexual harassment, which is enough to establish an

22  Unruh Act violation; Defendants maintain the Complaint's non-conclusory allegations only

23  reflect that Defendants' response to the harassment was reasonable.  (ECF No. 11 at 16; ECF No.

24  12 at 10.)

25          Based on the finding that Plaintiff has pleaded sufficient facts going to the deliberate

26  indifference element of her Title IX, § 1983-Title IX, and § 1983-Equal Protection claims as

27  asserted against Smith, Zamora, and District, the Court finds Plaintiff plausibly alleges that

28  Smith, Zamora, and District responded inadequately to her reports of E.H.'s harassment and

therefore states a claim for violations of the Unruh Act.  *See Nicole M.*, 964 F. Supp. at 1371–72,

1388–89 (finding plaintiff adequately pleaded intentional discrimination by principal,

superintendent, and school district for purposes of Unruh Act claim where same allegations were

sufficient to establish Equal Protection claim); *Michelle M.*, 2006 WL 2927485, at *7–8 (denying

motion for summary adjudication of Unruh Act claim against school district and individual

defendants based on same arguments in support of Title IX claim).  Also, for the reasons

previously discussed, Plaintiff does not allege sufficient facts with respect to Kern to establish an

Unruh Act claim against him.

Accordingly, this Court DENIES Defendants' Motion to Dismiss Plaintiff's Unruh Act

claims as to Smith, Zamora, and District, but GRANTS Defendants' Motion as to Kern.

Dismissal of the claim against Kern is with leave to amend.  *Lopez*, 203 F.3d at 1130.

E.        Motion to Strike Request for Punitive Damages

Finally, Defendants seek dismissal of Plaintiff's prayer for punitive damages (ECF No. 9-

1 at 12–13), which this Court construes as a motion to strike pursuant to Rule 12(f).  In her

Opposition, Plaintiff concedes that she does not plead individual Defendant conduct related to

punitive damages and seeks to withdraw her prayer for punitive damages.  (ECF No. 11 at 17.)

Accordingly, the Court GRANTS Defendants' Motion to Strike Plaintiff's prayer for punitive

damages with prejudice.

**IV.    CONCLUSION**

Based on the foregoing, the Court hereby GRANTS IN PART and DENIES IN PART

Defendants' Motion to Dismiss (ECF No. 9) as follows:

1.    Defendants' Motion to Dismiss Plaintiff's Title IX and § 220 claims (Claims One and

Three) is DENIED;

2.    Defendants' Motion to Dismiss Plaintiff's § 1983 Title IX claims (Claim Two) is

DENIED as asserted against Smith and Zamora, and GRANTED with leave to amend

as asserted against Kern;

///

///

3.  Defendants' Motion to Dismiss Plaintiff's § 1983 Equal Protection claim (Claim Two) is DENIED as asserted against Smith and Zamora, and GRANTED with leave to amend as asserted against Kern;

4.  Defendants' Motion to Dismiss Plaintiff's § 1983 failure to train claim (Claim Two) is GRANTED with leave to amend;

5.  Defendants' Motion to Dismiss Plaintiff's negligence claim (Claim Four) based on immunity is DENIED without prejudice;

6.  Defendants' Motion to Dismiss Plaintiff's negligence claim (Claim Four) is DENIED as asserted against Smith, Zamora, and District, and GRANTED with leave to amend as asserted against Kern; and

7.  Defendants' Motion to Dismiss Plaintiff's Unruh Act claim (Claim Five) is DENIED as asserted against Smith, Zamora, and District, and GRANTED with leave to amend as asserted against Kern.

Defendants' Motion to Strike Plaintiff's prayer for punitive damages (ECF No. 9) is GRANTED with prejudice.

Plaintiff may file an amended complaint not later than 30 days from the electronic filing of this Order.  Defendants' responsive pleading is due not later than 21 days after Plaintiff files her amended complaint.

IT IS SO ORDERED.

DATED:  September 23, 2020

Troy L. Nunley
United States District Judge